UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SYL JOHNSON, *also known as* Sylvester Johnson *doing business as* Syl-Zel Music *doing business as* Twinight Records,<br><br>    Plaintiff,<br><br>v.<br><br>UMG RECORDINGS, INC., *a Delaware Corporation as successor by merger to MCA Records, Inc., Individually doing business as* Geffen Records *doing business as* MCA Records *doing business as* Ume *doing business as* UMD *doing business as* Respect the Classics,<br><br>    Defendant. | Case No. 3:17-cv-01548<br><br>Judge Aleta A. Trauger<br>Magistrate Judge Newbern |

## MEMORANDUM

Pending before the court is a Motion to Transfer for Improper Venue under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a) or, in the Alternative, to Transfer Venue for the Convenience of the Parties under 28 U.S.C. § 1404(a), filed by Defendant UMG Recordings, Inc. (UMG). (Doc. No. 9.) Plaintiff Syl Johnson filed a response in opposition (Doc. No. 20), to which UMG replied (Doc. No. 23). The Motion to Transfer Venue for the Convenience of the Parties under § 1404(a) will be granted, and this case will be transferred to the United States District Court for the Central District of California.

### I.   Factual and Procedural Background

In 1968, Plaintiff Syl Johnson, who is a Chicago rhythm and blues musician, recorded a cover of the song "I Feel an Urge Coming On," which he retitled "I Feel an Urge." (Doc. No. 1,

PageID# 7, ¶ 20.) In the bridge of that song, Johnson's "distinctive vocal 'Ohh' is heard," followed by a "a fast paced drum roll," an "instrumental guitar rhythm played over a spread out drum pattern," a "high note played on a saxophone," and Johnson "singing the word 'Yeah.'" (*Id.* at PageID# 8, ¶ 3) Twinight Records released Johnson's recording of "I Feel An Urge" in 1968, and The Numero Group, a Chicago-based record label, reissued it in 2011 and in 2015. (*Id.* at PageID# 9, ¶ 26.) "[D]igital formats" of the song "that are credited to Johnson and The Numero Group are sold by major internet distributors that include Amazon.com, Juno.co.uk[,] and Microsoft.com." (*Id.*)

In 1991, "hip-hop duo 'Eric B. and Rakim'" recorded "Juice (Know The Ledge)" and "Know The Ledge" (collectively, the Juice Tracks) as performance, in part, of a contract with UMG. (*Id.* at PageID# 10, ¶¶ 31, 33.) Although the Juice Tracks have slightly different "outros" (or concluding phrases), they are otherwise identical. (*Id.*) Johnson claims that components of the bridge in "I Feel An Urge" were digitally "manipulated and sliced" in a process known as sampling and comprise "approximately 25%" of the Juice Tracks. (*Id.* at PageID# 11, ¶¶ 35, 36.) UMG's predecessor, MCA Records, Inc. (MCA), registered a copyright for the Juice Tracks in 1992 without mentioning "the misappropriated Johnson Sample," despite, Johnson alleges, being "aware that Johnson's consent and a license to use the music for [the Juice Tracks] should have been obtained." (*Id.* at PageID# 14, ¶¶ 44, 46.)

Johnson did not discover that "I Feel An Urge" had been sampled without his consent until 2013, when he shared a copy of that recording with Matthew Clifford, a former disc jockey (*Id.* at PageID# 15, ¶ 52.) Clifford was familiar with the Juice Tracks, and "he immediately recognized Johnson's voice [in "I Feel An Urge"] as the voice in the introductory hook in [the Juice Tracks] and the third voice throughout [those tracks.]" (*Id.* at PageID# 15–16, ¶ 52.) Johnson then began

2

gathering information in preparation for a lawsuit. (*Id.* at PageID# 16, ¶ 53.) Johnson alleges that the Juice Tracks ended up in "over 386 . . . separate products" (the Juice Products), including "music albums, movies, greatest hits compilations, videos, video games[,] and commercials . . . ." (Doc. No. 20, PageID# 381.)

Johnson filed his first lawsuit relating to the alleged misappropriation of "I Feel An Urge" in the United States District Court for the Northern District of Illinois on May 4, 2015 (Doc. No. 1, PageID# 16, ¶ 54.), apparently because he lives in Chicago. That court granted UMG's motion to dismiss for lack of personal jurisdiction on January 4, 2014, and instructed Johnson to "refile where the court has personal jurisdiction." *Johnson v. Barrier*, No. 15-CV-03928, 2017 WL 36442, at *6 (N.D. Ill. Jan. 4, 2017).

Johnson filed his lawsuit in this court *pro se*[1] on December 12, 2017, alleging that UMG, by "sell[ing], ship[ping,] and distribut[ing] . . . the Juice Products in Tennessee, Illinois[,] and in other States," committed the intentional tort of misappropriation under Tennessee law.[2] (Doc. No. 1, PageID# 1–3, ¶¶ 1, 4); Tenn. Code Ann. § 47-25-1701. Johnson seeks compensatory and punitive damages in amounts to be proved at trial and injunctive relief, "prohibiting UMG . . . from [making] any further online or physical product sales of Juice Products . . . unless Johnson is paid a licensing fee and given credit for [the "I Feel An Urge" sample]." (Doc. No. 1, PageID# 19, ¶ 68.) Johnson alleges that this court has personal jurisdiction over UMG via Tennessee's long-arm

---

[1] Johnson is now represented by counsel. (Doc. No. 14.)

[2] In his response in opposition to UMG's Motion to Transfer Venue, Johnson states that he "brings claims under Illinois law for misappropriation and for injunctive relief against [UMG]" and does not mention Tennessee law. (Doc. No. 20, PageID# 381.) The difference between the description of Johnson's claim in his Complaint and the description he offers in his response to UMG's venue motion, while potentially important if the court were tasked with ruling on the merits of Johnson's claims, is not relevant to resolution of UMG's Motion to Transfer Venue.

3

statute and that UMG's "continuous[] and deliberate[] sales in Tennessee" establish that requiring UMG to "defend this lawsuit in Tennessee meets minimum due process requirements . . . ." (*Id.* at PageID# 6, ¶¶ 14, 17.) Johnson also claims that venue is proper in the Middle District of Tennessee "under 28 U.S.C. § 1391(b)(2) and (b)(3) in that a substantial part of the acts and omissions giving rise to Johnson's claims occurred in this District." (*Id.* at PageID# 6, ¶ 18.)

UMG's attorneys made limited appearances to challenge the propriety of venue in the Middle District of Tennessee (Doc. Nos. 6, 7). Invoking Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a), UMG argues that venue is not proper in the Middle District of Tennessee and that the case should be transferred to the Central District of California, where UMG has its principal place of business. (Doc. No. 10, PageID# 331.) Alternatively, UMG argues that, if the court finds that venue is proper in the Middle District of Tennessee, it should still transfer this lawsuit to the Central District of California under 28 U.S.C. § 1404(a) for the convenience of the parties. (*Id.* at PageID# 332.) Johnson filed a response in opposition in which he argues that venue is proper in the Middle District of Tennessee and, even if it were not, a transfer would not promote the interests of the litigation or the parties. (Doc. No. 20, PageID# 377.) UMG filed a reply. (Doc. Nos. 23, 23-1.) Finally, Johnson filed a notice of supplemental authority that supports his position that transfer is inappropriate. (Doc. Nos. 24, 24-1.)

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss or transfer a lawsuit on the basis of "improper venue." Fed. R. Civ. P. 12(b)(3). Section 1406(a) similarly directs a court to "dismiss, or if it be in the interest of justice, transfer" a case brought in an improper district or division "to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The propriety of venue is generally governed by 28 U.S.C. § 1391, which

4

was designed "'to ensure that the plaintiff does not select a venue that is unfair or inconvenient to the defendant.'" *Centerville ALF, Inc. v. Balanced Care Corp.*, 197 F. Supp. 2d 1039, 1047 (S.D. Ohio Mar. 18, 2002) (quoting *United Liberty Life Ins. Co. v. Pinnacle W. Capital Corp.*, 149 F.R.D. 558, 562 (S.D. Ohio 1993)); *see also Atl. Marine Constr. Corp. Co., Inc.*, v. *U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). The statute provides that, in a civil action, venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

For purposes of § 1391(b)(1), a corporation "resides" "in any judicial district in which [it] is subject to the court's personal jurisdiction with respect to the civil action in question . . . ." *Id.* § 1391(c)(2). The plaintiff bears the burden of establishing that his case "falls within one of the three categories set out in § 1391(b)." *Atl. Marine Constr. Corp. Co., Inc.*, 571 U.S. at 55; *Receiver of Assets of Mid-Am. Energy, Inc. v. Coffman*, 819 F. Supp. 2d 884, 890 (M.D. Tenn. 2010). If he does not, the court may "dismiss, or if it be in the interest of justice, transfer [it] to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). In ruling on a Rule 12(b)(3) motion, the court may look beyond the complaint but "'must draw all reasonable inferences and resolve factual conflicts in favor of [the plaintiff].'" *Receiver of Assets of Mid-Am. Energy, Inc.*, 819 F. Supp. 2d at 891 (quoting *Gone to the Beach, LLC v. Choicepoint Serv.*, 434 F. Supp. 2d 534, 536–37 (W.D. Tenn. 2006)).

5

If venue is proper in the Middle District of Tennessee, the court may still transfer this lawsuit to another court where "it might have been brought" "[f]or the convenience of parties and witnesses" "or in the interest of justice . . . ." 28 U.S.C. § 1404(a). The purpose of a transfer under this provision is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). It is UMG's burden to establish that a transfer under § 1404(a) is justified. *Doe v. Univ. of Tenn.*, No. 3:16-CV-199, 2016 WL 1253004, at *7 (M.D. Tenn. Mar. 29, 2016).

### III. Analysis

UMG has waived its challenge to this court's personal jurisdiction and, because it is the only defendant in this action, venue is proper in the Middle District of Tennessee under 28 U.S.C. § 1391(b)(1). UMG's motion to transfer for improper venue under Rule 12(b)(3) and 28 U.S.C. § 1406(a) should therefore be denied. However, because a transfer of this action to the Central District of California would promote convenience of the parties and the interests of justice, UMG's motion to transfer under 28 U.S.C. § 1404(a) should be granted.

#### A. Motion to Transfer for Improper Venue

In his Complaint, Johnson asserts that venue is proper in the Middle District of Tennessee under 28 U.S.C. § 1391(b)(2) and (b)(3), "in that a substantial part of the acts and omissions giving rise to Johnson's claims occurred in this District." (Doc. No. 1, PageID# 6 ¶ 18.) In its motion to transfer, UMG argues that venue is not proper in the Middle District of Tennessee under either provision. (Doc. No. 1, PageID# 6, ¶ 18; Doc. No. 10, PageID# 331.) UMG argues that § 1391(b)(2) cannot serve as the basis for venue because "the only connection between this District and [Johnson's] claim against [UMG] is [Johnson's] allegation that some small number of [UMG's] nationwide sales of the allegedly misappropriated products occurred in Nashville,

6

Tennessee." (Doc. No. 10, PageID# 331.) UMG further argues that, because venue is proper in the Central District of California where it has its principal place of business, § 1391(b)(3) "does not apply." (*Id.*)

In his response, Johnson abandons his arguments under § 1391(b)(2) and § 1391(b)(3) and, instead, invokes § 1391(b)(1) to claim that UMG "resides" in the Middle District of Tennessee, because it is subject to the Court's personal jurisdiction. (Doc. No. 20, PageID# 378, 385.) Johnson points to UMG's Nashville offices and its long history of doing business in Tennessee to support his claim. (*Id.*) UMG replies that it does not have sufficient contacts to this jurisdiction arising out of this litigation and, therefore, that venue cannot be proper under § 1391(b)(1). (Doc. No. 23, PageID# 1079–80.)

Johnson did not plead that venue was proper under § 1391(b)(1) in his Complaint. It is Johnson's burden to establish that venue exists and, because he has conceded the two bases for venue that he did plead, the court could find that he has not met that burden. On the other hand, UMG has not argued that it is not subject to this court's personal jurisdiction in a Rule 12(b)(2) motion, making that argument for the first time in its reply. Ultimately, UMG's failure to assert affirmatively that it is not subject to the court's personal jurisdiction is of greater significance.

"Courts have found that challenges to personal jurisdiction and venue must be raised separately in a defendant's first motion to dismiss, or else they are waived" under Rule 12(h). *Sazerac Co., Inc. v. Intercontinental Packaging Co.*, No. 3:14-CV-205-H, 2014 WL 12726640, at *2 (W.D. Ky. June 6, 2014) (collecting cases); *Means v. U.S. Conference of Catholic Bishops*, 836 F.3d 643, 648–49 (6th Cir. 2016) (explaining that "Rule 12(b) includes motions to dismiss for lack of personal jurisdiction *and* for improper venue" and that a motion to dismiss for improper venue that excludes a personal jurisdiction defense waives the latter defense "by operation of Rule

7

12(h)") (emphasis in original); *Gen. Design Sign Co. v. Am. Gen. Design, Inc.*, No. CIV. 3:02-CV-2298-H, 2003 WL 251931, at *1 (N.D. Tex. Jan. 31, 2003) (finding waiver even where, as here, an objection to venue requires an analysis of personal jurisdiction). Such challenges must be made separately because they implicate different interests: personal jurisdiction involves due process limitations on a court's power to subject a defendant to its jurisdiction, while venue raises important, but less fundamental, questions of convenience and efficiency. *See Centerville ALF, Inc. v. Balanced Care Corp.*, 197 F. Supp. 2d 1039, 1047 (S.D. Ohio 2002). Further, Rule 12(g)(2) prohibits the filing of a successive 12(b) motion based on a defense "that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2); *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 701 (6th Cir. 1978) (emphasizing that the specified 12(b) defenses must be presented "simultaneously", rather than in "piecemeal fashion", and that any defense "available at the time of the original motion but [] not included, may not be the basis of a second pre-answer motion"); *Consol. Rail Corp. v. Grand Trunk W. R.R. Co.*, 592 F. Supp. 562, 567 (E.D. Penn. 1984) (explaining that the waiver rule "'reinforces the policy of subdivision (g) forbidding successive motions'") (quoting Fed. R. Civ. P. 12(h) advisory committee notes to the 1966 amendment)). The waiver rule thus "benefits the court as well as the opposing party by requiring a litigant to raise certain technical objections, the basis of which should be apparent from the outset of the action, before the litigation has moved forward." *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 721 (3d Cir. 1982).

By failing to move to dismiss under Rule 12(b)(2) for a lack of personal jurisdiction, UMG waived its argument that venue is improper under § 1391(b)(1). The theory of personal jurisdiction that Johnson presented in his response in opposition to the pending motion should have been no surprise; it is simply an elaboration of the theory Johnson laid out in his Complaint. (*Compare*

Doc. No. 1, PageID# 6, *with* Doc. No. 29, PageID# 384–85.) Further, an objection to personal jurisdiction raised in a reply brief is not the equivalent of a motion under Rule 12(b)(2).[3] *See Natarajan v. CLS Bank Int'l*, No. 12-06479, 2014 WL 1745024, at *2 n.4 (D.N.J. Apr. 30, 2014) (citing Rule 12(h) waiver rule and the general rule that an argument raised for the first time in a reply brief is not properly before the court in rejecting defendant's effort to raise an objection to personal jurisdiction in a reply); *Summit Training Source, Inc. v. Mastery Techs., Inc.*, No. 1:00-CV-127 WAM, 2000 WL 35442327, at *3 (W.D. Mich. June 1, 2000) (finding that defendant's objection to personal jurisdiction, raised for the first time in a reply in support of a motion to change venue, "was clearly an afterthought" and therefore waived).

Apart from the failure to file a Rule 12(b)(2) motion, UMG's conduct in this lawsuit may provide an independent basis upon which to find "legal submission to the jurisdiction of the court." *Gerber*, 649 F.3d at 519. "[S]ubmissions, appearances[,] and filings" that create a "reasonable expectation that [a defendant] will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking result in waiver of a personal jurisdiction defense." *Id.* (internal quotation and citation omitted). Without objecting to the court's jurisdiction, UMG moved to transfer venue under 28 U.S.C. § 1406(a) or § 1404(a). Because transfer under § 1404(a) is only appropriate "where [a court] has personal jurisdiction over the defendant," *Audi AG & Volkswagen of Am., Inc. v. Izumi*, 204 F. Supp. 2d 1014, 1022

---

[3] Some courts have allowed defendants to amend a Rule 12(b) motion to include a defense that was originally omitted in order to avoid waiver of that defense. *See Bechtel v. Liberty Nat'l Bank*, 534 F.2d 1335, 1341 (9th Cir. 1976); *Jenny Yoo Collection, Inc. v. Watters Design Inc.*, No. 16-CV-2205 (VSB), 2017 WL 4997838, at *6 (S.D.N.Y. Oct. 20, 2017); *Thomas v. Bet Sound-Stage Rest./Brettco, Inc.*, 61 F. Supp. 2d 448, 458 (D. Md. 1999); *Polaroid Corp. v. Feely*, 889 F. Supp. 21, 24 (D. Mass. 1995); *Keefe v. Derounian*, 6 F.R.D. 11, 14 (N.D. Ill. 1946). This line of cases is inapplicable here because UMG has not sought leave to amend its motion to include a Rule 12(b)(2) argument.

(E.D. Mich. 2002) (citing *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993)), UMG should not have asked the court to consider that basis for dismissal if it planned to object to personal jurisdiction.[4]

Through its failure to file a Rule 12(b)(2) motion and its other jurisdiction-invoking conduct, UMG waived any argument that this court lacks personal jurisdiction over it.[5] As such, venue is proper in the Middle District of Tennessee under 28 U.S.C. § 1391(b)(1), and UMG's motion to transfer under Rule 12(b)(3) and 28 U.S.C. § 1406(a) must be denied.

**B. Motion to Change Venue for the Convenience of the Parties and the Litigation**

Because the parties agree that this lawsuit "might have been brought" in the Central District of California, where UMG has its principal place of business (Doc. No. 20, PageID# 389; Doc. No. 10, PageID# 338), the court may begin its analysis by considering whether a transfer of this lawsuit serves the purpose of 28 U.S.C. § 1404(a). 28 U.S.C. § 1404(a); *Helder v. Hitachi Power Tools, USA Ltd.*, 764 F. Supp. 93, 96 (E.D. Mich. 1991) (explaining that a court may only analyze whether transfer under § 1404(a) promotes convenience and efficiency if it is satisfied that, in the receiving court, there would be subject matter jurisdiction, personal jurisdiction, and proper venue). In ruling on a motion under 28 U.S.C. § 1404(a), "district courts have 'broad discretion' to determine when party 'convenience' or 'the interests of justice' make a transfer appropriate." *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (quoting *Phelps v. McClellan*, 30 F.3d

---

[4] In its reply, UMG continued to argue that transfer is appropriate under § 1404(a) even as it simultaneously asserted that venue was improper under § 1391(b)(1) due to the court's lack of personal jurisdiction. (Doc. No. 23, PageID# 1083.)

[5] Thus, there is no need for jurisdictional discovery to determine whether UMG's "volume of business within Tennessee" is sufficient to subject it to the court's personal jurisdiction. (Doc. No. 20, PageID# 391.)

658, 663 (6th Cir. 2009)). Factors relevant to this determination include: "(1) the convenience of the parties and witnesses; (2) the accessibility of evidence; (3) the availability of process to make reluctant witnesses testify; (4) the costs of obtaining willing witnesses; (5) the practical problems of trying the case most expeditiously and inexpensively; and (6) the interests of justice." *Doe*, 2016 WL 1253004, at *7 (citing *Reese*, 574 F.3d at 320). Unless, on balance, these factors strongly weigh in favor of transfer, "the plaintiff's choice of forum should rarely be disturbed." *Reese*, 574 F.3d at 320. The weight that should be given a plaintiff's choice of forum and the relative interests of the potential forum states may also be considered. *See Means*, 836 F.3d at 651; *see also Flight Sols., Inc. v. Club Air, Inc.*, No. 3:09-CV-1155, 2010 WL 276094, at *4 (M.D. Tenn. Jan. 14, 2010).

      **1. Convenience of the Parties**

Transfer under § 1404(a) should be avoided when it would "simply exchange the inconvenience of one party for that of the other." *Flight Sols., Inc.*, 2010 WL 276094, at *4 (quoting *Siteworks Sols., LLC v. Oracle Corp.*, No. 08-2130-A/P, 2008 WL 4415075, at *4 (W.D. Tenn. Sept. 22, 2008)); *see also Kelly Servs. v. Eidnes*, 530 F. Supp. 2d 940, 949 (E.D. Mich. 2008). The parties articulate general reasons for the convenience of their preferred forums. Because UMG is headquartered in Santa Monica, located in the Central District of California, trial in that district would be more convenient for it. (Doc. No. 10, PageID# 339.) Although he is not a resident of Tennessee, Johnson prefers this district because he "can get to Nashville," where he does business regularly, "quicker and cheaper than he can get to California." Johnson also states

that his attorney and administrative assistant reside in Tennessee.[6] (Doc. No. 20, PageID# 389–90.)

Neither party argues with specificity that it will face significant financial hardship if required to litigate in the other's preferred forum. *Siteworks Sols., LLC v. Oracle Corp.*, No. 08-2130-A/P, 2008 WL 4415075, at *4 (W.D. Tenn. Sept. 22, 2008). Thus, "the paramount consideration remains whether the transferee forum is more convenient to the parties than Plaintiff's chosen forum." *Medtech Prods. Inc.*, 2016 WL 67895, at *5 (quoting *B.E. Tech., LLC v. Apple Inc.*, No. 2:12-CV-02831-JPM-tmp, 2013 WL 3166620, at *10 (W.D. Tenn. June 20, 2013)). UMG has shown that its preferred forum will be more convenient to it as the location of its headquarters. Although Johnson has shown that this court is more convenient to him as his chosen forum, that choice is afforded less weight here because Johnson does not live in the Middle District of Tennessee. *Means*, 836 F.3d at 651. This factor is therefore neutral in the court's analysis.

### 2. Convenience of the Witnesses

"Witness convenience is one of the most important factors in determining whether to grant a motion to change venue under § 1404(a)." *Thomas v. Home Depot, U.S.A., Inc.*, 131 F. Supp. 934, 937 (E.D. Mich. 2001). The convenience of party witnesses, or witnesses who are employed by a party, weighs less than the convenience of non-party witnesses "because it is generally

---

[6] Courts are in conflict regarding the relevance of counsel's location in this analysis, and the presence of Johnson's counsel in Tennessee carries minimal weight here. *Compare Medtech Prods. Inc. v. Ranir, LLC*, No. 2:15-CV-02584-JPM-tmp, 2016 WL 67895, at *5 (W.D. Tenn. Jan. 5, 2016) (finding the location of counsel irrelevant to the § 1404(a) analysis), *with Staggert v. Team Oil Tools LP*, No. 2:16-CV-822, 2017 WL 2189558, at *5 (S.D. Ohio May 18, 2017) (considering location of counsel). The court also notes that Johnson's attorney lists her address as being in Memphis, Tennessee, which is in the state's Western District. (Doc. No. 14.) Johnson's administrative assistant resides in Shelby County, also located in the Western District. (Doc. No. 20.) Paradoxically, UMG's counsel is located in the Middle District of Tennessee.

presumed that party witnesses will appear voluntarily in either jurisdiction, but non-party witnesses, with no vested stake in the litigation, may not." *Flight Sols., Inc.*, 2010 WL 276094, at *5. Nonetheless, the convenience of employee witnesses is still a factor in the analysis. *Thomas*, 131 F. Supp. at 938–39 (collecting cases and noting that nothing in the plain language of § 1404(a) restricts the convenience-of-witnesses analysis to non-employee witnesses).

Although UMG has an office in Nashville, UMG argues that "personnel with knowledge [of the Juice Tracks] are located" in the Central District of California. (Doc. No. 11, PageID# 343, ¶ 6.) The same is true of Interscope Records, which is the successor to the company that recorded the Juice Tracks and a "division of [UMG]." (*Id.* at PageID# 343, ¶ 4.) UMG argues that its Santa Monica-based personnel in "business affairs, finance, royalties, and licensing" (*id.*) have knowledge of the Juice Tracks and products and will be witnesses in this case. (Doc. No. 10, PageID# 339.) UMG has thus shown that "key testimony in this case is likely to come from witnesses residing in [the Central District of California]." *Staggert*, 2017 WL 2189558, at *5.

In his response, Johnson does not identify any witnesses who are located in the Middle District of Tennessee, arguing instead that, in the age of technology, "[p]lace no longer matters." (Doc. No. 20, PageID# 389.) Johnson states that UMG's allegedly unlicensed sampling "will be proven by expert witnesses, who can be deposed in Tennessee, or in California, or in New York, or Illinois," "[p]erhaps by telephone deposition" or "visual and audio conferencing." (*Id.*) Although Johnson states that UMG "cannot assert that there are witnesses in California, but not in Tennessee," and that "[i]t is highly unlikely that many witnesses in this case will be found in

[UMG's] principal office," he offers nothing to support that assertion. Johnson's attempt to demonstrate the presence of UMG witnesses in Tennessee fails.[7] (*Id.* at PageID# 381, 389.)

UMG states that the witnesses in this lawsuit are located "primarily" in the Central District of California, where it keeps its principal place of business.[8] (Doc. No. 10, PageID# 339.) Johnson has failed to rebut that claim and does not identify any witnesses who are located in this district.

---

[7] To the extent that Johnson is arguing that UMG's general business presence in Tennessee—its Nashville office, employees, registration with the State of Tennessee, and banking activities (Doc. No. 20, PageID# 378–79, 390–91)—mandates the conclusion that UMG has employees here who have knowledge of the Juice Tracks, that argument fails. The only evidence Johnson offers suggesting that there might be UMG personnel in this district with knowledge of the Juice Tracks is his administrative assistant's purchase of a Juice product that was "shipped by MyPlay Direct," an alleged "affiliate" of UMG, "from its location at 468 McNally Drive, Nashville, TN." (Doc. No. 20, PageID# 379.) But MyPlay Direct, Inc. "is not a parent, subsidiary, or affiliate of [UMG]." (Doc. No. 23-1, PageID# 1087.)

To the extent that Johnson challenges the declaration of UMG Vice President JoAn Cho as unreliable, that argument also fails. Johnson's attack on Cho's credibility stems from the testimony she provided at an evidentiary hearing in the Northern District of Illinois as to whether that court had personal jurisdiction over UMG. (Doc. No. 20, PageID# 386–88.) Johnson argues that Cho's testimony revealed ignorance of the process by which UMG determines a region's share of nationwide sales and, therefore, that her declaration in this lawsuit should be disregarded as "unreliable and based on guess and conjecture." (Doc. No. 20, PageID# 388.) First, even if Cho lacks knowledge of how UMG determines a region's market share, Johnson offers no reason to believe that she does not know where UMG conducts its business. Second, it is difficult to find that Cho's declaration should be disregarded because of unconvincing testimony in the Northern District of Illinois when that court relied on Cho's testimony to find that it lacked personal jurisdiction over UMG. (Doc. No. 1-6, PageID# 303.)

[8] It is not clear that Eric B. and Rakim will be witnesses in this case. They are not named as defendants, and Johnson does not mention them in arguing the issue of witness convenience. (Doc. No. 1, PageID# 3; Doc. No. 20, PageID# 389–91.) UMG only references them to point out that they do not reside in Tennessee. (Doc. No. 10, PageID# 339.) Their inclusion as witnesses does not change the outcome of the analysis. Because Eric. B and Rakim "are believed to reside in New York or New Jersey," neither the Middle District of Tennessee nor the Central District of California is a convenient venue (although a flight to Los Angeles is longer than a flight to Nashville). (Doc. No. 10, PageID# 333.) Further, neither the Middle District of Tennessee nor the Central District of California would be able to subpoena them to secure their testimony. *See* Fed. R. Civ. P. 45(c)(1). Eric B. and Rakim's east coast location is thus neutral in the analysis and insufficient to outweigh the inconvenience to UMG employees of a trial in the Middle District of Tennessee.

Therefore, this factor weighs in favor of transfer. *See Flight Sols., Inc.*, 2010 WL 276094, at *5 (finding that, where every identified witness, except for one, was located in the receiving forum, the convenience-of-the-witnesses factor favored transfer); *Staggert*, 2017 WL 2189558, at *5 (finding that transfer would be more convenient for the witnesses where the movant had shown that the "majority of its key testimony" was likely to come from its employees in Texas and the non-movant had only vaguely alluded to the "company men" he might call as witnesses).

### 3. Accessibility of the Evidence

UMG states that "records relating to . . . [the Juice products]," including "present and historical sales and expense records," are located in Los Angeles County and that no such records are located in its Nashville office. (Doc. No. 11, PageID# 344, ¶ 344; Doc. No. 23-1, PageID# 1087.) Johnson counters that "this case will involve electronic discovery[,] which can occur anywhere." (Doc. No. 20, PageID# 390.) Johnson does not argue that any relevant evidence is located in this district. (*Id.* at PageID# 389–91.)

In its reply, UMG neither specifies the nature of the relevant records it claims are in California, nor responds to Johnson's contention that they should be accessible electronically from anywhere. (Doc. No. 23, PageID# 1083–84.) This factor thus has negligible weight in the § 1404(a) analysis. *See Staggert*, 2017 WL 2189558, at *5 (explaining that this factor "matter[ed] little", given that "it's not too burdensome to transfer records electronically", and the movant had failed to identify "documentary evidence that would be unavailable . . . or too bulky or difficult to transport" if the motion were denied); *Doe*, 2016 WL 1253004, at *8 (holding that the location of evidence does not carry much weight in the § 1404(a) analysis "in this age of technology"); *Flight Sols., Inc.*, 2010 WL 276094, at *5 n.7 (holding that the existence of relevant documents in the

receiving forum weighs little "[i]n light of current technology, which allows documents to be scanned and produced electronically").

### 4. Relative Interests of the Forum States

This factor weighs in favor of transfer. UMG argues that California has a greater interest in resolving this dispute because UMG is "at home" there and neither party is a resident of Tennessee. (Doc. No. 10, PageID# 340.) UMG also argues that it makes sense to task California residents, who "are more closely connected to the community in which [UMG] and witnesses reside," with jury duty in this case. (*Id.* (citing *In re Aredia*, 2008 WL 686213, at *14).) Johnson disagrees, arguing that UMG "is not a corporation which has a 'local interest'" and that "[t]his case does not involve a 'local controversy.'" (Doc. No. 20, PageID# 390.)

That argument is insufficient to establish that Tennessee has a greater interest in resolving this dispute. Whether or not UMG has a local interest is irrelevant; the question is whether Californians have an interest in adjudicating a tort claim against a corporation that is headquartered there. While Johnson stresses the nationwide (and therefore non-local) nature of this controversy, that is not an argument that establishes Tennessee's greater interest in this lawsuit. UMG has offered a plausible reason that California has an interest in this lawsuit, while Johnson has offered nothing of that nature with respect to Tennessee. *See City of Warren Gen. Emps.' Retirement Sys. v. Rayonier Advanced Materials, Inc.*, No. 3:17-CV-01167, 2018 WL 2984728, at *3 (M.D. Tenn. June 14, 2018) (explaining that a district in which a corporation is located has an interest in monitoring it for misconduct in order to protect citizens). This factor therefore weighs in UMG's favor.

### 5. Relative Docket Congestion

Docket congestion may be measured by analyzing "the median time elapsed from the filing of a civil case to its disposition," as UMG suggests (Doc. No. 10, PageID# 340), or the median time from the filing of a civil lawsuit to trial. *See In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). Application of either metric weighs in favor of transfer. Citing federal judicial caseload statistics, UMG points out that, for the twelve-month period ending on September 30, 2017, the "median time elapsed from the filing of a civil case to its disposition [was] 10.6 months in [this district], compared to only 4.9 months in the Central District of California." (Doc. No. 10, PageID# 340–41.) During that same period, the median time from filing to a civil trial was 26.9 months here, compared to 18.9 months there. *United States District Courts-Combined Civil and Criminal Federal Court Management Statistics (September 30, 2017)*, 45, 68, http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2017/09/30-1. While docket congestion by itself is not, as Johnson argues, "a legal, justifiable reason to transfer [this] matter" (Doc. No. 20, PageID# 391), to the extent that it is weighed in the court's analysis, it weighs in favor of transfer. *See Showhomes Franchise Corp. v. LEB Sols., LLC*, Case No. 3:17-CV-00508, 2017 WL 3674853, at *2 (M.D. Tenn. Aug. 24, 2017) (concluding that this court's "highly-congested docket" strongly supported transfer).

### 6. Johnson's Choice of Forum

Johnson's choice of forum is entitled to minimal weight in this analysis. Johnson argues that his choice of forum should be given "foremost consideration," quoting the unpublished Sixth Circuit decision *West American Insurance Company v. Potts*, No. 89-6091, 1990 WL 104034, at *2 (6th Cir. July 25, 1990). (Doc. No. 20, PageID# 383.) But, as UMG correctly notes (Doc. No. 23, PageID# 1083), although a plaintiff's choice of forum normally carries "substantial weight,"

that is not the case when the plaintiff does not live in the forum and the action has a limited connection to it. *Lisenbee v. FedEx Corp.*, 579 F. Supp. 2d 993, 1007 (M.D. Tenn. 2008); *Means*, 836 F.3d at 651. Johnson resides in Illinois, not Tennessee (Doc. No. 1, PageID# 3).

Further, Johnson fails to adequately respond to UMG's argument that this lawsuit "bears only a tangential connection to Tennessee", because "the only alleged connection between this District and [Johnson's] claim is that a fraction of [UMG's] nationwide sales of the allegedly misappropriated products were made in Nashville, Tennessee." (Doc. No. 10, PageID# 339.) Johnson concedes that UMG's sales in Tennessee are just one aspect of this lawsuit, emphasizing that his "misappropriation claims against [UMG] are nationwide, even worldwide" and that he "does not seek to recover based only on sales in the State of Tennessee or in this district." (Doc. No. 20, PageID# 385, 389) Nonetheless, he argues that UMG "has a very real presence in Tennessee", given that it banks here and has offices and employees here. (*Id.* at PageID# 391.) But UMG's general presence in Tennessee is irrelevant to this factor unless that presence relates to the subject of Johnson's claims. In Cho's declaration, she states that, although UMG has a Nashville office, it "does not conduct business related to [the Juice Tracks there]." (Doc. No. 23-1, PageID# 1087.) Apart from his unconvincing attack on the reliability of Cho's declaration, Johnson offers no reason to conclude otherwise. This lawsuit's limited connection to the Middle District of Tennessee further decreases the weight of Johnson's choice of forum in this analysis.

On balance, the § 1404(a) factors therefore weigh in favor of transfer. Litigation of this lawsuit in the Central District of California will be convenient for the only identified witnesses, consistent with the interest that Californians have in monitoring UMG's activities, and likely to proceed more quickly there. Although Johnson's choice of forum as the plaintiff has some weight,

it is not enough to overcome these benefits of transfer. UMG has met its burden. UMG's motion to transfer this lawsuit to the Central District of California under § 1404(a) will be granted.

An appropriate order will enter.

ENTER this 29th day of August 2018.

_____
ALETA A. TRAUGER
U.S. DISTRICT JUDGE